ILENE J. LASHINSKY (AZ #3073)
United States Trustee
District of Arizona

JENNIFER A. GIAIMO (NY #2520005)
Trial Attorney
230 North First Ave., Suite 204
Phoenix, Arizona 85003-1706
Telephone: (602) 682-2617
Email: Jennifer.A.Giaimo@usdoj.gov

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ELIZABETH ANN NAYLOR and RONALD STEPHEN OWENS, | ) ) | Case No. 2:26-bk-05144-MCW |
| | ) | |
| Debtors. | ) ) | UNITED STATES TRUSTEE'S OBJECTION TO EMERGENCY MOTION TO EXTEND AUTOMATIC |
| _____ | ) ) | STAY |

The United States Trustee ("UST"), by and through the undersigned counsel, files this Objection to the Emergency Motion to Extend Automatic Stay filed by debtors, Elizabeth Ann Naylor and Ronald Stephen Owens ("Debtors"), pursuant to 11 U.S.C. § 362(c)(3)(B), and respectfully shows the following:

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Debtors filed their voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. ("Code"), on May 22, 2026. *See Docket #1.* Debtors previously filed a voluntary bankruptcy petition in this Court under Chapter 13 of the Code on August 14, 2025, under case number 2:25-bk-07596-PS (hereinafter "the

Chapter 13"). *See Case No. 2:25-bk-07596-PS, Docket #1.* The Chapter 13 was dismissed on January 26, 2026 based on Debtors' failure to comply with the recommendations of the Chapter 13 Trustee, Edward Maney ("Chapter 13 Trustee"), with respect to the Debtors' Chapter 13 Plan. *See Case No. 2:25-bk-07596-PS, Docket #33.* Debtors filed this case on May 22, 2026, less than four months after the Chapter 13 was dismissed.

**I.**

**<u>Code Section 362(c)(3) Requires that the Stay be Terminated</u>**

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") in an effort to prevent bankruptcy abuses committed by serial filing debtors. *See* H.R. Rep. No. 109–31, pt. 1, at 2 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89. The House Report states:

> With respect to the interests of creditors, the proposed reforms respond to many of the factors contributing to the increase in consumer bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system….

*Id.; see also In re Seaman*, 340 B.R. 698, 708 (Bankr. E.D.N.Y. 2006). Identical text from section 302 of the BACPA, titled "Discouraging Bad Faith Repeat Filings," ultimately became codified at section 362(c)(3)(A). *See In re Curry,* 362 B.R. 394, 401 (Bankr. N.D. Ill. 2007).

Code section 362(c)(3)(A) provides as follows:

> if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case….

11 U.S.C. § 362(c)(3)(A). Based on Code section 362(c)(3), the stay with respect to the Debtors in this case automatically terminates on June 21, 2026 because the Debtors' Chapter 13 was pending within the preceding year of this case and was dismissed.

Code section 362(c)(3)(B) allows the Court to extend the stay on motion "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). The Debtors bear the burden of proof to demonstrate good faith. *See In re Van Damme,* 2025 WL 3188018, *5 (9th Cir. BAP Nov. 14, 2025).

**II.**

**There is a Presumption of Bad Faith in this Case**

Under Code section 362(c)(3)(C), a presumption that the case was not filed in good faith (that can only be overcome by clear and convincing evidence) arises if "there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal" of the prior case. 11 U.S.C. § 362(c)(3)(C). The bad faith presumption applies here because there has been no substantial change in Debtors' financial condition or personal affairs.

With the exception of alleged monthly business income of $250 per month, the Debtors' current income is precisely the same as it was when they filed the Chapter 13. The income consists primarily of exempt social security funds ($2,003 for Debtor 1 and $3,664 for Debtor 2) and pension funds ($2,730 for Debtor 1 and $12,686 for Debtor 2).

The alleged $250 monthly business income reflected on Schedule I, Item 8a, lacks any credibility.  The Debtors failed to attach the statement required under Schedule I, Item 8a, showing gross income, expenses, and net business income calculations, thus providing none of the necessary details to assess the credibility of their claim that they are suddenly earning $250 of net business income every month.  The Debtors attest that they are retired, and debtor Elizabeth Ann Naylor ("Naylor") claims that she is the full-time caregiver for her husband.  Moreover, no business income had been disclosed in the Chapter 13.

Even if the $250 additional business income is verifiable, such income is insignificant and, therefore, does not amount to a substantial change in the Debtors' financial condition from their recently dismissed Chapter 13 filing.

Moreover, a comparison of the Debtors' Schedules I and J in this case and in the Chapter 13 confirms that Debtors' financial position has not improved; it has worsened. In the Chapter 13, Debtors attested that their net monthly income was $14,443. In this case, Debtors attest that their net monthly income is just $406.85. Even accounting for the fact that the Chapter 13 Schedule J omitted the $12,286 monthly mortgage payment now claimed in this case (which, had it been included, would have reduced the Chapter 13 net income to $2,157), the Debtors' financial condition has deteriorated, not improved. This decline is the opposite of the "substantial change" that would support a finding of good faith or increase the likelihood of plan confirmation.

Based on the foregoing, the presumption of bad faith arises as a matter of law under Code section 362(c)(3)(C).  As such, it was incumbent upon the Debtors to submit

-4-

clear and convincing evidence to this Court to overcome the presumption of bad faith. They wholly failed to do so. The Debtors have presented no evidence much less clear and convincing evidence to demonstrate good faith. Further, as explained below, the evidence on the record clearly proves that this case was not filed in good faith.

### III.

### **The Record Substantiates Bad Faith**

Even if the presumption of bad faith is inapplicable, there is ample evidence in the record to establish that this case was not filed in good faith. In the *Van Damme* case cited above, the Ninth Circuit BAP held that "[f]or the purposes of § 362(c)(3)(B), courts have borrowed from the pre-existing factors considered to determine the debtor's good faith in proposing a chapter 13 plan." *Van Damme,* 2025 WL 3188018 at *10 (*citing In re Elliott-Cook*, 357 B.R. 811, 814 (Bankr. N.D. Cal. 2006)). Citing *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999), the *Van Damme* court reiterated those factors as follows: "(1) whether the debtor misrepresented facts in the petition, unfairly manipulated the Bankruptcy Code, or otherwise filed the current petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present." *Van Damme,* 2025 WL 3188018 at *10. Each of those factors weigh against a finding of good faith in this case.

### A.  **Misrepresentations in Pleadings**

The Debtors' sworn disclosures in this case and the Chapter 13 are glaringly contradictory on a number of material matters. For example, in the Chapter 13 case, the

Debtors valued the "Property" (as defined by Debtors in their motion) at $1.5 million, claiming that they owned only 50% of that value and that the Debtors' daughter and son-in-law (Sarah and Christian Navarro) own the remaining 50%. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 12 (Schedule A/B).* In this case, the Debtors now claim 100% ownership of the entire value of the Property. *See Docket #9 at pg. 3 (Schedule A/B).* Just four months after the dismissal of the Chapter 13, the Debtors claim a completely different ownership structure with respect to the Property, completely failing to disclose any information about the previously claimed ownership of their daughter and son-in-law.

Despite failing to disclose the ownership interest, if any, of Sarah and Christian Navarro on Schedule A in this case, the Debtors claim on Schedule H that Sarah and Christian Navarro are co-debtors on their home mortgage obligation. *See Docket #9 at pg. 15 (Schedule H).* Either the Navarros hold an ownership interest in the Property (as sworn in the Chapter 13 and as is consistent with their continued status as co-debtors on both mortgages), in which case the current Schedule A/B is false, or they do not (as implied by the current Schedule A/B), in which case the Debtors have failed to explain how or why a 50% ownership interest disclosed under oath nine months ago simply disappeared. Either way, one of the Debtors' two sworn submissions to this Court is false.

In the Chapter 13, Debtors disclosed unsecured debt of $511,327. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 22-38 (Schedule E/F).* In this case, the Debtors claim zero unsecured debt. *See Docket #9 at pg. 13 (Schedule E/F).* Debtors have

disclosed no information and provided no explanation as to how over half a million dollars of unsecured debt, disclosed under oath nine months ago, has been entirely eliminated.

In the Chapter 13, the Debtors' Statement of Financial Affairs ("SOFA"), Items 4 and 5, disclose no income from operating a business. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 46-47 (SOFA).* In this case, the Debtors' SOFA Item 4 discloses gross business income of $12,500 earned between January 1, 2026 through the petition date. *See Docket #9 at pg. 22 (SOFA).*

In the Chapter 13, monthly expenses disclosed on Schedule J were $6,640. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 44 (Schedule J).* Now, the Debtors claim monthly expenses of $20,926. *See Docket #9 at pg. 19 (Schedule J).* Even assuming the Chapter 13 Schedule J had disclosed mortgage payments of $12,286 per month, the total expenses disclosed in Chapter 13 would be $18,926. That is still $2,000 less than the expenses currently claimed by the Debtors.

In the Chapter 13, the Debtors claimed $425 of monthly horse insurance expenses. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 44 (Schedule J).* No such expense is disclosed in this case. Moreover, in this case, the Debtors claim $2,400 per month of in-home care assistance, which was not disclosed at all in the Chapter 13. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 44 (Schedule J); Docket #9 at pg. 19 (Schedule J).* The validity of that expense is uncertain in light of the Debtors' assertion that the debtor, Naylor, is debtor Ronald Owens' full-time caregiver.

Case 2:26-bk-05144-MCW    Doc 37    Filed 06/11/26    Entered 06/11/26 12:25:12    Desc
Main Document      Page 7 of 25

In the Chapter 13, the Debtors disclose that Naylor also used the name Jan Black. *See Case No. 2:25-bk-07596-PS, Docket #1 at pg. 1 (Petition).* No such disclosure is made in the Chapter 11 petition. *See Docket #1 at pg. 1 (Petition).*

Debtors have also concealed an ownership interest in a limited liability company. In the Chapter 13, the Arizona Department of Revenue ("ADOR") objected to the Debtors' Plan on the ground that Debtors owned or had owned an entity called Good Luck Shop, LLC. *See Case No. 2:25-bk-07596-PS, Docket #16.* Public records confirm the objection was well-founded, as the New Mexico Secretary of State's database identifies Naylor as the member and manager of Good Luck Shop, LLC, formed in New Mexico on November 1, 2024. A true and correct copy of that public document is attached hereto as Exhibit A. Despite ADOR having flagged this issue nine months ago, Debtors failed to disclose this asset in either the Chapter 13 or this case, which demonstrates a continuing misrepresentation to the Court.

### B. Debtors' History of Filings and Dismissals

The Debtors' Chapter 13 was dismissed less than four months before the petition date in this case based on delinquencies that the Debtors made no effort to cure. *See Case No. 2:25-bk-07596-PS, Docket #33.* The delinquencies were substantial: unfiled tax returns, a $31,200 plan arrearage, and a feasibility shortfall. The Chapter 13 Trustee explicitly laid out the following issues that were required to be addressed:

1. Resolve a proof of claim filed by the Arizona Department of Revenue (which had objected to the Debtors' Chapter 13 Plan based on Debtors' failure to file transaction privilege tax (TPT) returns and failure to file income tax returns for the years 2023 and 2024);
2. Resolve a proof of claim filed by U.S. Bank/Select Portfolio;

3. File Arizona income tax returns for 2023 and 2024 and file Arizona TPT returns for quarters ending December 2024, March 2025, and June 2025;[1]
4. Produce to the Chapter 13 Trustee copies of bank statements related to five bank accounts disclosed in the Schedules;
5. Cure delinquent Plan payments of $31,200;
6. Produce to the Chapter 13 Trustee copies of signed and completed federal tax returns for 2024, tax form W-2s, and tax form 1099s;
7. Prove plan payment feasibility in light of the fact that Debtors' Chapter 13 Schedules I and J reveal disposable income of $14,443 whereas the Chapter 13 plan payments were $15,600 per month;
8. Produce documentation proving that the value of the Debtors' disclosed business interests in Quartet Farms, LLC, Nobody Told Me, LLC, and LizMax Investments, LLC, was zero; and
9. Explain the inconsistency between the Debtors' disclosure on Schedule B that they own multiple horses despite there being no disclosure of tack or trailers; also explain why the Debtors' Schedules disclose no vehicle ownership or leasing.

*See Case No. 2:25-bk-07596-PS, Docket #25.*

In response, the Debtors complied with none of the Trustee's recommendations. In their instant motion, Debtors seek to place blame exclusively on their prior counsel for their failure to comply with the Chapter 13 Trustee's recommendations. However, a number of items were clearly within the exclusive control of the Debtors. The Debtors were obligated to file Arizona tax returns, but they failed to do so. The Debtors also were the parties ultimately responsible to cure the $31,200 plan payment delinquency, but they failed to do so. Likewise, the Debtors as the taxpayers had the ability to produce copies of their 2024 federal tax return and related tax documentation, but they failed to do so.

---

[1]   Debtors claim in their motion that their "2023 and 2024 federal and state tax returns have now been completed." Yet, they fail to attach copies of those completed returns to substantiate their claim. Moreover, the completion of the tax returns is insufficient; they must also be filed.

In any event, the Debtors' attempt to shirk any responsibility for their own failure to comply with the Chapter 13 Trustee's explicit directives should be rejected outright. The Debtors made no attempt to bring their concerns about their attorney to the Court's or the Chapter 13 Trustee's attention. And, there was no attempt to seek reconsideration of the Court's dismissal order. Consequently, the Debtor's history of filings and dismissals weigh heavily against a finding of good faith in this case.

**C.**      **<u>Debtors Are Only Seeking to Defeat the State Foreclosure</u>**

On February 19, 2026, a Notice of Trustee Sale was recorded with the Maricopa County Recorder's Office disclosing that a trustee sale of the Property would occur on May 26, 2026. A true and correct copy of the publicly available Notice of Trustee Sale is attached hereto as Exhibit B. The Debtors filed this case just four days before the scheduled sale.

Debtors essentially admit that this case was filed for the sole purpose of halting the Trustee Sale of the Property. Debtors admit that if their motion is denied and the Trustee Sale proceeds, it "permanently terminates this reorganization." *See Docket #32 at pg. 20.* The timing of the bankruptcy filing just days before the Trustee sale is also indicative of the primary purpose of this filing, *i.e.,* to obstruct the lender from exercising its foreclosure rights.

Notably, the Debtors acknowledge that in April 2025, their mortgage arrearage was only $24,000. *See Docket #32 at pg. 6.* Since then, the Debtors have apparently failed, or refused, to make their monthly mortgage payments, resulting in a current mortgage arrearage in excess of $191,000. *See Docket #32 at pg. 12.* Debtors offer no

explanation as to why they failed to continue making mortgage payments during the Chapter 13. The fact that the Debtors allowed their mortgage arrearage to increase nearly eightfold in little more than a year indicates that these Debtors lack the financial wherewithal and discipline to successfully reorganize in Chapter 11 on the heels of a failed Chapter 13.

### D.    Egregious Behavior

Already, the Debtors have engaged in egregious behavior by completely ignoring the UST's request for standard documentation that is provided by all Chapter 11 debtors. Worse, a telephonic initial debtor interview was scheduled for June 11, 2026 at 10:00 a.m., but Debtors never appeared.

Egregious behavior is further evident in the Debtors' complete disregard of the Chapter 13 Trustee's directives, failure to file delinquent tax returns for 2023 and 2024, failure to disclose debtor Naylor's ownership of Good Luck Shop, LLC despite the issue being explicitly raised by the ADOR in its Plan objection, contradictory sworn statements in pleadings filed with the Court in the Chapter 13 and this case, and the timing of the instant filing just days before the scheduled Trustee Sale.

Debtors also repeatedly ignored basic compliance. They failed to file the required statement for net business income under Schedule I, Item 8a, failed to disclose previous names used, failed to disclose the percentage of their LLC ownership interests in Schedule B, Item 19, and failed to disclose valid EINs for their businesses on SOFA, Item 27. The most concerning failure on the Debtors' part was their failure to cure the delinquent Chapter 13 plan payments of $31,200.

Case 2:26-bk-05144-MCW    Doc 37    Filed 06/11/26    Entered 06/11/26 12:25:12    Desc
Main Document        Page 11 of 25

Additionally, the Debtors' sworn statements directly conflict with sworn testimony by their daughter, Laura Owens, in her own Chapter 7 case filed in this Court under case number 2:25-bk-11801-BKM.[2]  In that case, Laura Owens testified that her parents provide 100% of her financial support, including paying her monthly auto loan payments and car insurance.  A true and correct copy of excerpts of the transcript of that testimony is attached hereto as Exhibit C.

Yet, there is no disclosure in the Debtors' Schedule J or in the Schedule J in the Chapter 13 of the Debtors' payment of their daughter's living expenses.  Presumably, the Debtors had paid their daughter's auto loan within the year before the petition date, but Debtors disclose no such payments on SOFA, Item 8.  Nor were any gifts to Laura Owens disclosed on SOFA, Item 13.

The Debtors have demonstrated a pattern of falsehoods and utter disregard for basic bankruptcy compliance, allowing their prior case to be dismissed rather than complying with statutory and Trustee requirements only to re-file a new bankruptcy on the eve of a scheduled foreclosure.  Where, as here, a debtor with no demonstrated ability to fund a plan files (or refiles) immediately before a foreclosure sale, courts have consistently found that the filing's only practical effect and purpose is to invoke the automatic stay to delay the secured creditor's exercise of its state-law remedies. *See In re Reswick*, 446 B.R. 362, 367–70 (9th Cir. BAP 2011) (discussing Congress's intent in enacting section 362(c)(3) to address precisely this pattern of conduct).

---

[2]  Laura Owens' Chapter 7 case was voluntarily dismissed on May 14, 2026.

Code section 362(c)(3) was enacted under the express heading "Discouraging Bad Faith Repeat Filings" and was specifically intended to curb the precise pattern of conduct present here. A repeat filer whose purpose is to obtain successive automatic stays to forestall a creditor's legitimate collection and foreclosure remedies is not seeking fresh start or orderly organization; they are only seeking delay.

**IV.**

**<u>Conclusion</u>**

The fundamental purpose of Chapter 11 is to permit a debtor with a viable business or income stream to reorganize its affairs for the benefit of creditors. Here, the Debtors' only substantial asset is the Property as to which they owe arrearages of over $191,000. Debtors' only income is fixed retirement income (Social Security and pensions) plus an unsubstantiated $250 per month. Their secured debt against the Property exceeds $1.9 million (with a value of just $1.5 million) and is increasing. Debtors' own calculations show net monthly income of just $406.85, which is a fraction of what would be required to service that debt, let alone fund a confirmable plan that addresses the deficiencies the Chapter 13 Trustee already identified (unfiled tax returns, unresolved proof-of-claim disputes, and an unresolved ADOR objection, none of which the motion suggests have been resolved in the interim). Under these circumstances, the only function served by extending the stay is to postpone the inevitable.

The Debtors' motion rehashes the desire, or need, to secure a mortgage modification. However, the Debtors have been unable to obtain a mortgage modification for at least two years. There are no facts to suggest that they'll be able to secure one

now.  At this point, any additional attempt to compel the lender to modify the Property

mortgage is simply an exercise in futility.

As the Court explained in *Reswick*, section 362(c)(3) reflects Congress's

considered judgment that debtors who file repeat cases within a short time of a prior

dismissal should not automatically receive the benefit of the stay and that the burden

should fall on such debtors to demonstrate, by clear and convincing evidence, that their

renewed filing reflects a genuine change in circumstances and a good-faith intent to

reorganize.  *See Reswick,* 446 B.R. at 372.  Permitting the stay to remain in place here, on

this record, would reward exactly the conduct section 362(c)(3) was enacted to

discourage.

WHEREFORE the UST respectfully requests that the Court deny the Debtors'

motion and grant any other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 11th day of June, 2026.

ILENE J. LASHINSKY
United States Trustee
District of Arizona

/s/ JAG (NY #2520005)

_____
JENNIFER A. GIAIMO
Trial Attorney

Case 2:26-bk-05144-MCW   Doc 37   Filed 06/11/26   Entered 06/11/26 12:25:12   Desc
Main Document   Page 14 of 25

# CERTIFICATE OF SERVICE

This is to certify that on June 11, 2026, a copy of the foregoing pleading was served on the Debtors by first-class mail at the following address:

Elizabeth Ann Naylor
11440 North 69th Street
Scottsdale, AZ 85254

Ronald Stephen Owens
11440 North 69th Street
Scottsdale, AZ 85254

/s/ Christopher Stewart

_____

Christopher Stewart
Paralegal



Login

# EXHIBIT A

GOOD LUCK SHOP, LLC

# Business Search

*As of 6/10/2026 we have processed all business filings received in our office through 6/2/2026.*

**To file an amendment on a Business Record, search for the business, and choose File Amendment from the slide out drawer.** *You must be logged in to file amendments. Please click on the Log In button in the top right and log in. If you do not have an account, please create one. The credentials from the previous system did not transfer to this system.*

**If the business you are searching contains a special character, you must include the special character to obtain results.**

Business Search  ⌄
Info:

 

**File Amendment**



**Request Certificate**

| | |
|---|---|
| *Business Name* | **GOOD LUCK SHOP, LLC** |
| *Status* | **Active** |
| *Initial Filing Date* | **11/01/2024** |
| *Entity Type* | **Domestic Limited Liability Company** |
| *Entity Sub-Type* | **Domestic LLC** |
| *Formed In* | **New Mexico** |
| *Record #* | **7912811** |
| *Agent* | **Corporate Service Center, Inc.**<br>**6300 Riverside Plaza Ln. NW, Ste 100, Albuquerque, NM 87120** |
| *Members and Managers* | **Elizabeth Naylor: Manager** |
| *Organizers and Incorporators* | **Elizabeth Naylor: Organizer** |
| *Alternate Business Names* | |



**View History**

Good |

*



Skip to main content

Case 2:26-bk-05144-MCW    Doc 37    Filed 06/11/26    Entered 06/11/26 12:25:12    Desc
Main Document    Page 16 of 25



Home

Search

Forms

Search Filter

○ Contains

○ Starts With

○ Name Availability

**Entity Type**

[Select an op...]

**Status**

[Select an op...]

**Registration Date**

Start    End

Search    **Clear Filters**

Advanced ∧

**Results: 1**

| Name | | Business ID |
|---|---|---|
| GOOD LUCK SHOP, LLC | › | 7912811 |

# GOOD LUCK SHOP, LLC

File Amendment          Request Certificate

| | |
|---|---|
| *Business Name* | **GOOD LUCK SHOP, LLC** |
| *Status* | **Active** |
| *Initial Filing Date* | **11/01/2024** |
| *Entity Type* | **Domestic Limited Liability Company** |
| *Entity Sub-Type* | **Domestic LLC** |
| *Formed In* | **New Mexico** |
| *Record #* | **7912811** |
| *Agent* | **Corporate Service Center, Inc. 6300 Riverside Plaza Ln. NW, Ste 100, Albuquerque, NM 87120** |
| *Members and Managers* | **Elizabeth Naylor: Manager** |
| *Organizers and Incorporators* | **Elizabeth Naylor: Organizer** |
| *Alternate Business Names* | |

View History

Unofficial Document

**EXHIBIT B**

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
2525 East Camelback Road, Suite 700
Phoenix, Arizona 85016

17
dr.

Title No: 260057860-AZ-VOI

## NOTICE OF TRUSTEE'S SALE
**File ID. #25-08950-SP-AZ**  Owens and Sarah Owens

The following legally described trust property will be sold, pursuant to the power of sale under that certain trust deed recorded on 04/26/2024 as Document No. 20240218545   of the Official Records of  Maricopa County,  AZ. **NOTICE! IF YOU BELIEVE THERE IS A DEFENSE TO THE TRUSTEE SALE OR IF YOU HAVE AN OBJECTION TO THE TRUSTEE SALE, YOU MUST FILE AN ACTION AND OBTAIN A COURT ORDER PURSUANT TO RULE 65, ARIZONA RULES OF CIVIL PROCEDURE, STOPPING THE SALE NO LATER THAN 5:00P.M. MOUNTAIN STANDARD TIME OF THE LAST BUSINESS DAY BEFORE THE SCHEDULED DATE OF THE SALE, OR YOU MAY HAVE WAIVED ANY DEFENSES OR OBJECTIONS TO THE SALE. UNLESS YOU OBTAIN AN ORDER, THE SALE WILL BE FINAL AND WILL OCCUR** at public auction on **May 26, 2026 at 10:00 AM in the Courtyard, by the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ 85003** and the property will be sold by the Trustee to the highest bidder for cash (in the forms which are lawful tender in the United States and acceptable to the Trustee, payable in accordance with ARS 33-811). The sale shall convey all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described as:

Lot 27, Desert Estates Unit Fifteen, according to Book 99 of Maps, Page 23, records of Maricopa County, Arizona.

The street address/location of the real property described above is purported to be:

**11440 N 69th St**
**Scottsdale, AZ 85254**
**Tax Parcel No.: 175-25-028 9**

The undersigned Trustee, **Leonard J. McDonald, Attorney at Law,** disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made in an "as is" condition, but without covenant or warranty, expressed or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed of Trust with interest thereon as proved in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

*(Notice of Sale continued following page ........)*

*Page 2 of Notice of Trustee's Sale*
*File ID: 25-08950-SP-AZ Owens and Sarah Owens*

Original Principal Balance: $1,600,000.00

Original Trustor: Ronald Owens and Elizabeth Naylor, husband and wife and Christian George Alfonso Navarro and Sara Owens, husband and wife, as joint tenants with right of survivorship
          11440 N 69th Street, Scottsdale, AZ 85254

Current Beneficiary:
U.S. Bank Trust Company, National Association, not in its individual capacity but solely as trustee for COLT 2024-3 Mortgage Loan Trust
Care of/Servicer
      Select Portfolio Servicing, Inc.
      3217 S Decker Lake Drive
      Salt Lake City, UT 84119

Current Trustee:
Leonard J. McDonald
2525 East Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 255-6035

Dated this ___19___ day of ___February___, 20_26_

Leonard J. McDonald, Attorney at Law
Trustee/Successor Trustee, is regulated by and
qualified per ARS Section 33-803 (A)2 as a
member of The Arizona State Bar

Unofficial Document

STATE OF ARIZONA
COUNTY OF MARICOPA

On this 19 day of February, 2026 before me, Stephen Daniel Clem, a Notary Public for said State, personally appeared Leonard J. McDonald personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public State of Arizona
Maricopa County
Stephen Daniel Clem
My Commission Expires 11/3/2026
Commission Number 635773

Stephen Daniel Clem, Notary Public

If a determination is made that this firm is a debt collector as that term is defined within the Fair Debt Collection Practices Act, then you are notified that this communication is from a debt collector, that this firm is attempting to collect a debt, and that any information obtained will be used for that purpose. Please be advised that if your personal liability for this debt has been modified or extinguished by a discharge in bankruptcy, this communication is provided solely in reference to the enforcement of the security instrument remaining on the property and is not an attempt to collect the discharged personal obligation. The notifications provided herein do not limit or detract from the rights provided for in the security instrument.

NOTICE: If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____
In re:                                  )
                                        )
LAURA OWENS                CH: 7         )    2:25-bk-11801-BKM
                                        )
TRANSCRIPT OF SECTION 341 HEARING       )
                                        )
MEETING OF CREDITORS                    )
_____    )


                              Phoenix, AZ

                              February 9, 2026
                              10:00 a.m.


        BEFORE ERIC HALEY, Chapter 7 Trustee, Hearing Officer

                   VIDEO/TELEPHONIC HEARING


APPEARANCES:

 Pro Se Debtor:                    Laura Owens

 For the Debtor in the            David Gingras
 Adversary Proceeding:            GINGRAS LAW OFFICE, PLLC
                                   4802 E. Ray Road #23-271
                                   Phoenix, AZ 85044


 For the United States            Jennifer Giaimo
 Trustee:                          OFFICE OF THE UNITED STATES
                                   TRUSTEE
                                   230 N. 1st Avenue, Suite 204
                                   Phoenix, AZ 85003


 For the Chapter 7 Trustee:        Terry A. Dake
                                   TERRY A. DAKE LTD.
                                   11811 N. Tatum, Suite 3031
                                   Phoenix, AZ 85028


 For Clayton Echard:               Markus Risinger
                                   WOODNICK LAW, PLLC
                                   1747 E. Morten Avenue #205
                                   Phoenix, AZ 85020



Proceedings recorded by electronic sound technician; transcript
produced by eScribers, LLC.

HEARING OFFICER: This is a call in the Owens case, Laura Owens, case 25-11801. I'm sorry. If you don't mind. I have to swear you in again.

LAURA OWENS, DEBTOR, SWORN

HEARING OFFICER: Would you state your full name for the record, please?

THE WITNESS: Laura Michelle Owens.

HEARING OFFICER: Ms. Owens, do you understand the importance of the oath you just took?

THE WITNESS: Yes.

HEARING OFFICER: Is your address correct as it's listed in your petition?

THE WITNESS: Yes.

HEARING OFFICER: Is that where you currently reside?

THE WITNESS: Yes.

HEARING OFFICER: Did you receive the bankruptcy information sheet I sent out?

THE WITNESS: Yes.

HEARING OFFICER: Had you lived in Arizona at least two years before you filed this case?

THE WITNESS: Yes.

HEARING OFFICER: In the past eight years, have you filed another bankruptcy case anywhere?

THE WITNESS: No.

escribers
www.escribers.net | 800-257-0885

mean, I'm trying to market myself as an entrepreneur, but it's not like I've got these businesses that are, you know, like, operable.

MS. GIAIMO: Okay. I'm not asking yet about whether they're operating. I'm asking about whether or not you are an owner, and you hold yourself out to be an owner of these entities on your LinkedIn account and on your sworn schedules in this case, so and now you're saying you're not an owner. You were just -- well, I don't know what you were. So were you an owner of the four entities?

THE WITNESS: I mean, I'm more, like, they're my family's entities, and I'm more like the face of my family's entities with those businesses, I guess.

MS. GIAIMO: Okay. Well, we can let --

THE WITNESS: That's the way I would say that. I know I'm not answering it well. I'm not trying to not be truthful. I genuinely don't know how to explain it.

MS. GIAIMO: Okay. Well, then, you'll have to make sure you -- I'm going to recommend to you that you go back over your schedules that you signed under penalty of perjury and make sure everything's accurate, because you have, in your sworn schedule, stated that you are an owner of those entities.

THE WITNESS: Okay. I will go back and reevaluate that. I am sorry.

MS. GIAIMO: Okay. All right. So on Schedule I,

which is where you were supposed to list your income on the bankruptcy schedules, you added a line item on 8h for family support for food and living expenses, and you put zero. So was that a mistake? Do you receive any kind of family support to pay your expenses, your monthly expenses?

THE WITNESS: They just pay them out of their money. I don't, like, out of my -- my parents pension and Social Security. They don't give me money to pay that. They pay it directly.

MS. GIAIMO: So what are they paying directly, when you say they pay it?

THE WITNESS: Well, I live on their property, so I mean, you could technically say they're paying, you know, housing and for my food.

MS. GIAIMO: Okay. What about your car payments?

THE WITNESS: We share a car. They pay. They pay for my car.

MS. GIAIMO: Okay. So they directly because, well, you are the sole owner of the car.

THE WITNESS: I am the sole owner, but they're paying for it right now, because I can't afford to make the payment.

MS. GIAIMO: Okay. So you know, that's something that you do need to specify how much it is, even if you have to come up with an estimate. On Schedule I of your schedules, you have to indicate how much money they're fronting for you for

eScribers
www.escribers.net | 800-257-0885

your expenses.

THE WITNESS: Okay.

MS. GIAIMO: I believe it's zero.

THE WITNESS: Okay. Okay.

MS. GIAIMO: So you'll need to figure that out and amend Schedule I, okay?

THE WITNESS: Okay.

MS. GIAIMO: Okay. So and I'm assuming your parents also pay your car insurance?

THE WITNESS: Yes.

MS. GIAIMO: Okay. So you don't pay any bills for yourself?

THE WITNESS: No.

MS. GIAIMO: And you say that you've never -- are you saying that you've never earned any income on your own, ever?

THE WITNESS: Correct.

MS. GIAIMO: Okay. How old are you?

THE WITNESS: I'm 35.

MS. GIAIMO: So 35 years you have not -- never made any income on your own to pay your own bills?

THE WITNESS: I mean, like I said, I've been the face of my parents' businesses, so they've, you know, paid my living expenses in exchange for me helping them.

MS. GIAIMO: Okay. So that's, kind of, a compensation for your services, then.

eScribers
www.escribers.net | 800-257-0885

HEARING OFFICER: All right. You are free to go then.

This meeting is concluded. Thank you for your time.

THE WITNESS: Thank you.

HEARING OFFICER: Bye-bye.

(Proceedings Concluded)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: <u>March 3, 2026</u>

<u>Hana Copperman</u>
eScribers, LLC
7227 N. 16th Street
Suite #207
Phoenix, AZ 85020