ILENE J. LASHINSKY (AZ #3073)
United States Trustee
District of Arizona

JENNIFER A. GIAIMO (NY #2520005)
Trial Attorney
230 North First Ave., Suite 204
Phoenix, Arizona 85003-1706
Telephone: (602) 682-2617
Email: Jennifer.A.Giaimo@usdoj.gov

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ELIZABETH ANN NAYLOR and | ) | Case No. 2:26-bk-05144-MCW |
| RONALD STEPHEN OWENS, | ) | |
| | ) | UNITED STATES TRUSTEE'S |
| Debtors. | ) | SUPPLEMENTAL RESPONSE TO |
| | ) | DEBTORS' MOTION TO DISMISS |
| _____ | ) | |

The United States Trustee ("UST"), by and through the undersigned counsel, files

this Supplemental Response to the Motion to Dismiss Case (Docket #57) filed by debtors,

Elizabeth Ann Naylor and Ronald Stephen Owens ("Debtors"), and respectfully submits

the following:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background

Debtors filed their voluntary bankruptcy petition under Chapter 11 of the United

States Bankruptcy Code, 11 U.S.C. ("Code"), on May 22, 2026. *See Docket #1*. Debtors

previously filed a voluntary bankruptcy petition in this Court under Chapter 13 of the

Code on August 14, 2025, under case number 2:25-bk-07596-PS (hereinafter "the Chapter 13"). *See Case No. 2:25-bk-07596-PS, Docket #1.* The Chapter 13 was dismissed on January 26, 2026 based on Debtors' failure to comply with the recommendations of the Chapter 13 Trustee with respect to the Debtors' Chapter 13 Plan. *See Case No. 2:25-bk-07596-PS, Docket #33.* Debtors filed this case on May 22, 2026, less than four months after the Chapter 13 was dismissed.

On June 8, 2026, the Debtors filed their Emergency Motion to Continue the Section 362(a) Stay (Docket #33), to which the UST objected (Docket #37). The UST incorporates the UST's objection to the motion to continue to stay as if fully set forth herein. A final hearing on the Debtors' Motion to Continue Stay was held on July 1, 2026, at which time the Court denied the Debtors' Motion (Docket #69).

On June 24, 2026, Debtors filed their Motion to Dismiss Case (Docket #57). The UST filed a limited objection to that motion, requesting that the case be dismissed with prejudice and a one-year bar to refiling (Docket #61). At the July 1, 2026 hearing, the Court withheld ruling on the Motion to Dismiss and directed the Debtors to produce certain documents, including an accounting of certain GoFundMe funds received by the Debtors pre-petition (Docket #69).

Thereafter, the Debtors produced documents and appeared for examination under oath at the meeting of creditors pursuant to Code section 341(a) on July 16, 2026. Debtors also amended several Schedules and the Statement of Financial Affairs ("SOFA") (Dockets #75-#78).

The Court will consider dismissal at the continued hearing set for August 6, 2026. *See Docket #69*. The UST now files this Supplemental Response to the Motion to Dismiss requesting that the case be dismissed with prejudice with a two-year bar to refiling bankruptcy in any federal bankruptcy court.

## II. Introduction

In advance of the August 6th hearing, the question that the UST has evaluated is whether creditors are better served by conversion to Chapter 7 or by dismissal with a two-year bar to refiling. The UST has concluded that dismissal with a two-year bar is the superior outcome.

The UST's investigation raised serious and unresolved concerns about the accuracy of the Debtors' sworn disclosures. However, in light of the Debtors' current financial status, dismissal is preferable to conversion. The UST has reviewed eighteen months of statements for eight Bank of America accounts, and that review establishes that there is no meaningful pool of collectible, nonexempt assets for a Chapter 7 trustee to liquidate. Conversion would cause delay for creditors and administrative expense for the estate without the likelihood of any return to unsecured creditors.

## III. The UST's Concerns Regarding the Debtors' Sworn Statements

Across three sets of schedules (the Chapter 13, the original filings in this case, and the amendments filed at Dockets #75 through #78), the Debtors have sworn to statements that cannot all be true. Ownership of Debtors' residence was sworn at fifty percent, then one hundred percent, then fifty percent again. Unsecured debt was sworn at $511,327.21, then at effectively zero, then at $729,875.60. The Debtors' animals were valued at

Case 2:26-bk-05144-MCW   Doc 89   Filed 08/03/26   Entered 08/03/26 12:03:20   Desc
Main Document      Page 3 of 12

$1,100 in both prior filings, described as seven retired horses and a dog, while the recent amendments value the Quartet Farms, LLC interest at $62,751.18 and values a single pony at $60,000.  Debtors previously answered "No" to Schedule G asking whether any leases were outstanding as of the petition date, but just recently disclosed a twelve-month lease of the pony to a third party.

Neither prior filing disclosed business income.  Yet, the SOFA amendment reports gross business income of $40,785 for 2024, $81,059 for 2025, and $26,172 for 2026.  Neither prior filing disclosed GoFundMe income.  Yet, the Debtors had received more than $100,000 from GoFundMe donations.  The amendments recently filed now disclose the receipt of $131,590 of GoFundMe funds in 2025 alone.

Item 13 of the SOFA asks for all gifts over $600 per person within two years before the petition date.  Twice the Debtors stated under oath that there were none, but the recent amendment now discloses $19,608 in gifts to daughter Laura Owens.  Previously, Debtors swore twice that they had made no payments on a debt owed to anyone who was an insider within one year before the petition date, but the recent amendment now discloses $21,056 paid on behalf of Debtors' daughter Sarah Owens Navarro in May 2025, March 2026, and May 2026.

Until the recent amendments, Debtor Naylor's membership and manager interest in Good Luck Shop, LLC went undisclosed in both cases even after the Arizona Department of Revenue raised it in the Chapter 13.  The recent amendments also disclose for the first time $7,000 in cashier's checks, Charles Schwab accounts, and $10,250 of

antique furniture, while a monthly in-home care expense of $2,400 and a monthly horse insurance expense of $425 each appeared in one filing and vanished from the others.

Statements of this character, if proven to have been made knowingly and fraudulently, would support an action to deny discharge under Code section 727(a)(4)(A). The UST does not abandon that view, but pursuing that remedy would not benefit the creditors that the UST is bound to protect.

**IV.     Conversion Would Yield No Distribution**

Code section 1112(b)(1) directs the Court, on a finding of cause, to convert or dismiss, "whichever is in the best interests of creditors and the estate."  Conversion satisfies that standard only if a trustee would have something to administer.  Here, a trustee would not.  The Debtors' residence is secured by liens exceeding $1.9 million against a value the Debtors themselves place between $1.5 million and $1,576,900, with a first position arrearage above $191,000 that continues to accrue.  There is no equity, and a trustee would likely abandon the residence under Code section 554(a).

The animals present no value for creditors for a different reason.  Whatever the pony is worth, and the $60,000 figure is the Debtors' own estimate, the estate would have to take custody of a living animal and expend estate funds on shelter, food, and maintenance.  The Debtors' records reflect that those costs include boarding charges, feed and supply purchases, veterinary services, and association fees, aggregating $38,499 in horse and farm expense over eighteen months.  A trustee would need to fund boarding, feed, veterinary care, insurance, and transport from an estate with no cash, would need a specialized broker to reach a narrow market, and would do so while the animal remains

Case 2:26-bk-05144-MCW    Doc 89    Filed 08/03/26    Entered 08/03/26 12:03:20    Desc
Main Document      Page 5 of 12

subject to a twelve-month lease.  The seven remaining horses are described in every filing as retired, which is to say they have no market and cost money every day.  Custody and sale expenses, payable ahead of unsecured creditors under Code section 503(b), would likely meet or exceed any proceeds realized by the Chapter 7 Trustee, who must close the estate as expeditiously as is compatible with the best interests of parties in interest.  *See* 11 U.S.C. § 704(a)(1).

There are no other apparent nonexempt assets for a Chapter 7 Trustee to administer.  The Amended Schedules disclose Schwab holdings of $831.84 and retirement accounts of $172.02 and $102.66 that are excluded or exempt, and income consisting of exempt Social Security and pension payments.  Remaining personal property is largely exempt under Arizona law and worth little net of the costs of collection and sale, and household goods held in storage secure roughly $26,000 in unpaid charges.

The insider transfers described above are the only theoretically available assets as avoidable transactions, but realizing on them would require adversary proceedings under Code sections 547 and 548 funded by an estate with no unencumbered cash.  Moreover, a Chapter 7 Trustee may eventually determine that the transferees are uncollectible.  Collection from Laura Owens is already called into question by the fact that Laura Owens recently filed her own Chapter 7 filing in this Court, which was ultimately dismissed.

Case 2:26-bk-05144-MCW    Doc 89    Filed 08/03/26    Entered 08/03/26 12:03:20    Desc
Main Document      Page 6 of 12

## V.  The GoFundMe Funds Are Beyond Recovery and Any Remedy Lies Outside Bankruptcy

The UST has particular concern about the GoFundMe proceeds.  The Debtors received approximately $132,480 in GoFundMe payouts into a single account, approximately $109,290 of it in January 2025.  The campaign solicited the public by reference to debtor Owens's Parkinson's disease, history of cancer, and cardiac condition and included the representation that his medical struggles had taken a toll both physically and financially.  Over the eighteen months reviewed, healthcare and pharmacy disbursements from all eight accounts totaled $17,209, roughly 2.7 percent of net spending, while discretionary spending totaled $191,192.  In the period during which the funds were deposited, $118,898 was dispersed  including $61,654.75 of mortgage payments, thousands of dollars of consumer credit card payments, $44,375 in capital contributions to the Debtors' limited liability companies, transfers to their adult daughters, retail and online shopping, food delivery exceeding $1,200 per month, restaurants, subscriptions, and travel.

Those facts raise a serious question whether donors received what they were promised, but it is not a question the UST can answer here.  The remedy available to the UST is an action under Code section 727 to deny a discharge.  That section protects the integrity of the bankruptcy process and preserves creditors' claims.  It compensates no one.  A judgment denying discharge would return not a single dollar to a donor, would create no fund, and would not adjudicate whether the representations on a fundraising page were true.  The donors and GoFundMe, Inc. are the parties with standing to pursue

whatever legal remedies exist as to the solicitation and application of donated funds, in a forum outside of bankruptcy.

Moreover, based on the UST's review of recent bank records, the GoFundMe funds have been fully expended and the accounts carry nominal balances. Therefore, recovery of any funds for the benefit of creditors by a Chapter 7 Trustee would require multiple preference actions by an estate that lacks unencumbered assets to fund such lawsuits.

## VI.    The Best Interests of Creditors and the Estate Favor Dismissal

If the case is converted, creditors will be relegated to waiting to pursue their rights while likely standing to receive nothing from a Chapter 7 liquidation. A Chapter 7 trustee would be appointed, a new meeting of creditors convened, and the estate would remain open through investigation and abandonment. If the UST filed a complaint objecting to discharge, the deadline would run sixty days after the first date set for the meeting of creditors under Federal Rule of Bankruptcy Procedure 4004(a). A contested Code section 727 action would then require discovery, depositions, motion practice, and trial. At least a year would pass between conversion and judgment.

Moreover, there is no guarantee that the UST would prevail under Code section 727. In response to a Code section 727 action, the Debtors would likely attribute false statements to prior counsel and to debtor Owens's documented illness and would likely argue that the amendments evidence an intent to correct rather than conceal. The UST believes those defenses would fail, but cannot represent that success is assured, and, in any event, success would still yield no distribution to creditors. A Code section 727

-8-

judgment would leave creditors holding exactly what dismissal gives them now, *i.e.,* claims enforceable under state law, only a year later.

Under dismissal, creditors act immediately. The secured lender may notice and complete its trustee's sale. Unsecured creditors may file or resume state court actions, including the two pending actions by JPMorgan Chase Bank, N.A., to reduce claims to judgment, record judgment liens, and garnish nonexempt assets. No trustee stands between them and their remedies. The two-year bar assures that those remedies cannot be interrupted again by a third bankruptcy petition filed on the eve of a sale. The comparison is therefore between a certain and immediate benefit to every creditor and a contingent one, available to no one for at least a year, that would cost the estate money to pursue and would distribute nothing even if it succeeded. Creditors are better served by remedies they may exercise today than by the prospect of a judgment that is neither assured nor remunerative.

**VII.** **Cause Exists to Dismiss for Bad Faith, Which Also Supports the Two-Year Bar**

Cause exists independent of the Debtors' own request for dismissal, and that same cause supports the two-year bar to refiling. Code section 349(a) provides that the dismissal of a case does not prejudice the debtor with regard to a subsequent filing "*[u]nless the court, for cause, orders otherwise.*" 11 U.S.C. § 349(a) (emphasis added). "The phrase '[u]nless the court, for cause, orders otherwise' in Section 349(a) authorizes the bankruptcy court to dismiss the case with prejudice." *In re Leavitt,* 171 F.3d 1219, 1223 (9th Cir. 1999). Bad faith is cause for dismissal with prejudice. *Id.* at 1224.

The UST addressed each of the factors required to find bad faith in her Stay Objection (Docket #37). Those same factors constitute cause for dismissal with prejudice. *Id.* Specifically, (1) the Debtors made numerous misrepresentations in their pleadings in this case and in the Chapter 13; (2) the history of the Debtors' filings and prior dismissal show a complete disregard of their basic obligations as bankruptcy debtors, including failing to file and produce tax returns and failing to cure substantial plan payment arrearages; (3) the sole purpose of this bankruptcy filing was to halt an imminent sale; and (4) the Debtors demonstrated egregious behavior, including failing to appear at a scheduled Initial Debtor Interview ("IDI") in this case and failing to produce to the UST standard documents required of all Chapter 11 debtors until ordered by the Court to do so.

In the recent case of *In re Corben*, 667 B.R. 791, 796 (Bankr. S.D.N.Y. 2025), the court confirmed that the bankruptcy court has authority to dismiss a bad faith case with prejudice. In considering whether dismissal with prejudice is permissible, the *Corben* court cited the Second Circuit Court of Appeals decision in *In re Casse,* 198 F.3d 327 (2d Cir. 1999), which held that "the Bankruptcy Code authorizes bankruptcy courts to dismiss bankruptcies filed in bad faith 'with prejudice,' that is, with a bar on future filings beyond the 180-day period contemplated by Code § 109(g)." *Corben*, 667 B.R. at 796 (*citing In re Casse,* 198 F.3d 327, 336 (2nd Cir. 1999)). The *Corben* court further pointed out:

> [A] number of courts have joined *Casse* in recognizing the bankruptcy courts' power to dismiss bad faith bankruptcy cases with prejudice. *See, e.g., Landis v. Ortega (In re Ortega)*, 2011 WL 10723285, at *6 (Bankr. E.D. Cal. 2011) ("Bad

faith is cause for dismissal with prejudice under section 349(a)"); *In re Rusher*, 283 B.R. 544, 548 (Bankr. W.D. Mo. 2002) ("Sections 105(a) and 349(a) can be used conjunctively to enjoin a serial filer from filing yet another bankruptcy petition for a period of time in excess of 180 days."); *see also* [Final Report of ABI Commission on Consumer Bankruptcy, Am. Bankr. Inst. 69 (2019)] at 68 ("it has become somewhat common for courts to enter orders of dismissal 'with prejudice,' prohibiting the filing of a new bankruptcy case for longer than the 180-day period specified in section 109(g).").

*Id.* at 797.

A dismissal with prejudice cannot be avoided simply because the debtors themselves seek voluntary dismissal. The *Corben* court addressed and rejected precisely that argument, holding that "[w]hile the Debtor does have an unfettered right to dismiss her bankruptcy, she does not have the right to evade the consequences of her bad faith filing." *Id.* at 801.

In this case, a two-year bar to refiling is reasonable and proportionate. The Debtors have filed two petitions in ten months. Each filing interrupted a creditor remedy, and the second filing followed a dismissal based on deficiencies that the Debtors made no effort to cure. A shorter bar would expire before a trustee's sale could realistically be completed and would invite the third filing that Code section 362(c)(3) was enacted to discourage. Two years is long enough for creditors to complete their remedies without interruption and not so long as to foreclose relief should a genuine need later arise.

### VIII. Debtors' Agreement to Dismissal with Two-Year Bar to Refiling

Counsel for the UST has conferred with Debtors regarding the relief requested herein, *i.e.*, dismissal with a two-year bar to refiling. Debtors stated that they will agree to that relief but dispute any factual assertions in the UST's Supplemental Response.

WHEREFORE The UST respectfully requests that the Court dismiss this Chapter 11 case under 11 U.S.C. § 1112(b), with prejudice to the filing of any bankruptcy petition by either Debtor for two years from entry and grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED this 3rd day of August, 2026.

ILENE J. LASHINSKY
United States Trustee
District of Arizona

/s/ JAG (NY #2520005)
_____
JENNIFER A. GIAIMO
Trial Attorney

## CERTIFICATE OF SERVICE

This is to certify that on August 3, 2026, a copy of the foregoing pleading was served on the Debtors by email at the following email addresses:

Elizabeth Ann Naylor
11440 North 69th Street
Scottsdale, AZ 85254
elizabeth@lizmaxinvestments.com

Ronald Stephen Owens
11440 North 69th Street
Scottsdale, AZ 85254
ronnsowens@gmail.com

/s/ Jennifer A. Giaimo
_____
Jennifer A. Giaimo

Case 2:26-bk-05144-MCW    Doc 89    Filed 08/03/26    Entered 08/03/26 12:03:20    Desc
Main Document         Page 12 of 12